**2014-1356**
_____

### United States Court of Appeals
### For the Federal Circuit
_____

**ABB TURBO SYSTEMS AG and ABB INC.,**

*Plaintiffs-Appellants,*

**v.**

**TURBOUSA, INC., A FLORIDA CORPORATION,
WILLEM FRANKEN, AND JOHAN HERMAN
FRANKEN,**

*Defendants-Appellees,*
_____

Appeal from the United States District Court for the Southern
District of Florida in Case No. 13-CV-60394,
Judge Kevin Michael Moore.
_____

### BRIEF FOR PLAINTIFFS-APPELLANTS
### ABB TURBO SYSTEMS AG and ABB INC.
_____

Kurt L. Glitzenstein
Fish & Richardson, P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Fax: (617) 542-8906
glitzenstein@fr.com

William R. Trueba, Jr.
Espinosa | Trueba, PL
1428 Brickell Ave., Ste 100
Miami, FL 33131
Telephone: (305) 854-0900
Fax: (855) 854-0900
wtrueba@etlaw.com

May 13, 2014

*Attorneys for Plaintiffs-Appellants
ABB Turbo Systems AG and ABB Inc.*

## CERTIFICATE OF INTEREST

Counsel for the Plaintiffs-Appellants, ABB Turbo Systems AG and ABB Inc., certifies the following:

1.    The full name of every party represented by me is:

ABB Turbo Systems AG and ABB Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

- ▪  Fish & Richardson, P.C.: Kurt L. Glitzenstein, Jack P. Smith III, Ajit S. Dang, and Erin P. Alper

- ▪  Peterson & Myers PA: Stephen Russell Senn

- ▪  Espinosa Trueba, PL: William R. Trueba, Jr. and Jorge Tadeo Espinosa

Dated: May 13, 2014          By:  *s/Kurt L. Glitzenstein*

Kurt L. Glitzenstein
*Attorney for Plaintiffs-Appellants*
*ABB Turbo Systems AG and ABB Inc.*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF AUTHORITIES ............................................................... v

ABBREVIATIONS AND CONVENTIONS ..................................... viii

STATEMENT OF RELATED CASES .............................................. 1

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF THE ISSUES ....................................................... 2

STATEMENT OF THE CASE ........................................................... 3

I.    Overview ............................................................................... 3

II.   Relevant Facts ...................................................................... 6

    A.   The Parties ..................................................................... 6

        1.   ABB and Its Intellectual Property ............................ 6

        2.   ABB's Allegations Regarding TurboNed, TurboUSA,
            and the Frankens ................................................... 8

    B.   ABB's Allegations Regarding Misappropriation of ABB's
       Turbocharger Trade Secrets ........................................ 10

        1.   Hans Franken ...................................................... 10

        2.   Willem Franken and TurboUSA ........................... 13

    C.   ABB's Discovery of the Trade Secret Misappropriations ............. 15

        1.   ABB Learned of the Appellees' Misappropriations
            After Filing Its Original Complaint ..................... 15

        2.   ABB Promptly and Timely Moved for Leave to File Its
            Amended Complaint ............................................ 16

SUMMARY OF THE ARGUMENT ............................................... 18

ARGUMENT ................................................................................. 20

I.   Standard of Review ............................................................... 20

II.  ABB's Amended Complaint Alleges Well-Pleaded Facts Supporting
     Each and Every Element of its Causes of Action.................................... 20

     A.   ABB Alleged Well-Pleaded Facts for Each Element of Its Cause
          of Action for Trade Secret Misappropriations (Count VII) ........... 22

          1.   ABB's Turbocharger Trade Secrets are Protectable Under
               Florida Law as Alleged in ABB's Amended Complaint ..... 22

          2.   Hans Franken, Willem Franken, and TurboUSA Each
               Misappropriated ABB's Turbocharger Trade Secrets
               Under Florida Law, as Alleged in ABB's Amended
               Complaint ................................................................................. 26

               i.   ABB Sufficiently Alleged Misappropriation by
                    Hans Franken .............................................................. 26

                    a.   ABB Alleged that Hans Franken Disclosed
                         and Used ABB's Turbocharger Trade
                         Secrets ............................................................. 27

                    b.   ABB Alleged that Hans Franken Knew or Had
                         Reason to Know He Improperly Acquired
                         ABB's Turbocharger Trade Secrets ................ 28

               ii.  ABB Sufficiently Alleged Misappropriation by
                    Willem Franken and TurboUSA .............................. 30

                    a.   ABB Alleged that Willem Franken and
                         TurboUSA Acquired, Disclosed, and Used
                         ABB's Turbocharger Trade Secrets ................ 30

                    b.   ABB Alleged that Willem Franken and
                         TurboUSA Knew or Had Reason to Know
                         that ABB's Turbocharger Trade Secrets were
                         Improperly Acquired ....................................... 32

iii

B.    ABB Alleged Well-Pleaded Facts for Each Element of Its Cause of Action for Conspiracy to Commit Trade Secret Misappropriation (Count VIII)........................................................ 33

C.    ABB's Causes of Action for Trade Secret Misappropriations (Count VII) and Conspiracy to Commit the Same (Count VIII) Are Plausible Under *Twombly/Iqbal*.............................................. 34

III.    The District Court's Alternative Bases for Dismissing ABB's Trade Secret Claims Turn on a Misinterpretation of Florida Law .................... 36

IV.    The District Court Erred in Finding that ABB Failed to Protect Its Trade Secrets ........................................................................... 38

V.    The District Court Erred in Dismissing ABB's Trade Secret Claims on the Basis of Appellees' Affirmative Defense of Statute of Limitations .............................................................................. 40

CONCLUSION ............................................................................. 45

iv

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                            **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................21, 34

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................20, 21, 39

*C.f. Raytheon Co. v. Indigo Sys. Corp.*,
  688 F.3d 1311 (Fed. Cir. 2012) ....................................................44

*C&F Packing Co. v. IBP, Inc.*,
  224 F.3d 1296 (Fed. Cir. 2000) ............................................44, 45

*Chaparro v. Carnival Corp.*,
  693 F.3d 1333 (11th Cir. 2012) .................................................20, 34

*Cultor Corp. v. A.E. Staley Mfg. Co.*,
  224 F.3d 1328 (Fed. Cir. 2000) ....................................................20

*Del Monte Fresh Produce Co. v. Dole Food Co.*,
  136 F. Supp. 2d 1271 (S.D. Fla. 2001)........................................22

*Emergency Care Res. Inst. v. Guidant Corp.*,
  No. 06-1898, 2006 U.S. Dist. LEXIS 88416 (E.D. Pa. Dec. 5,
  2006) ...........................................................................................43

*Forbus v. Sears Roebuck & Co.*,
  30 F.3d 1402 (11th Cir. 1994) ......................................................20

*Hennegan Co. v. Arriola*,
  855 F. Supp. 2d 1354 (S.D. Fla. 2012)........................................35

*Hollander v. Brown*,
  457 F.3d 688 (7th Cir. 2006) .......................................................45

*Int'l Schools Svcs., Inc. v. AAUG Ins. Co.*,
  No. 10-62115-CIV, 2012 U.S. Dist. LEXIS 153683 (S.D. Fla.
  July 25, 2012) .............................................................................27

*Jones v. Childers*,
  18 F.3d 899 (11th Cir. 1994) ........................................................40

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) ...................................................20

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
  636 F. Supp. 2d 1283 (M.D. Fla. 2009).......................................35

*La Grasta v. First Union Sec., Inc.*,
  358 F.3d 840 (11th Cir. 2004) .........................................40, 42, 44

*Leedom Mgmt. Grp. v. Perlmutter*,
  No. 8:11-CV-2108, 2012 U.S. Dist. LEXIS 18562 (M.D. Fla.
  Feb. 15, 2012) ..............................................................................33

*Lindley v. City of Birmingham*,
  515 Fed. Appx. 813 (11th Cir. Apr. 3, 2013) ...............................40

*United States ex rel. Matheny v. Medco Health Solutions, Inc.*,
  671 F.3d 1217 (11th Cir. 2012) ..............................................38, 44

*Medimport S.R.L. v. Cabreja*,
  929 F. Supp. 2d 1302 (S.D. Fla. 2013).........................................22

*Partylite Gifts, Inc. v. MacMillan*,
  No. 8:10-CV-1490, 2010 U.S. Dist. LEXIS 133440 (M.D. Fla.
  Nov. 24, 2010) ..............................................................................25

*Pushko v. Klebener*,
  399 Fed. Appx. 490 (11th Cir. 2010) ............................................27

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur
  Ltda.*,
  No. 09-23248-CIV, 2011 U.S. Dist. LEXIS 122830 (S.D. Fla.
  Oct. 24, 2011) ...............................................................................27

*Sciaretta v. Lincoln Nat'l Life Ins. Co.*,
  899 F. Supp. 2d 1318 (S.D. Fla. 2012).........................................33

*Sensormatic Elecs. Corp. v. Tag Co. US, LLC*,
  632 F. Supp. 2d 1147 (S.D. Fla. 2008).........................................25

*St. George v. Pinellas County*,
   285 F.3d 1334 (11th Cir. 2002) ........................................................38, 40, 41

*Zenith Elecs. Corp. v. Exzec, Inc.*,
   182 F.3d 1340 (Fed. Cir. 1999) ...............................................................2

**Statutes**

28 U.S.C. § 1295 ................................................................................................2

28 U.S.C. § 1331 ................................................................................................2

28 U.S.C. § 1332 ................................................................................................2

28 U.S.C. § 1338(a) ...........................................................................................2

28 U.S.C. § 1367(a) ...........................................................................................2

FLA. STAT. § 688.002 ................................................................................. *passim*

FLA. STAT. § 688.007 ................................................................................. *passim*

FLA. STAT. § 688.001 *et eq.* .........................................................................2, 22

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A) ................................................................................2

Fed. R. Civ. P. 8 ...............................................................................20, 21, 42

Fed. R. Civ. P. 12(b)(2)............................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................4, 38, 40

Fed. R. Civ. P. 41(a)(2)......................................................................................1

Fed. R. Civ. P. 54(b) .........................................................................................1

vii

## ABBREVIATIONS AND CONVENTIONS

"ABB" means the Plaintiffs-Appellants ABB Turbo Systems AG and ABB Inc., collectively.

"TurboUSA" means the Defendant-Appellee TurboUSA, Inc.

"TurboNed" means the former Defendant TurboNed Service B.V.

"Hans Franken" means the Defendant-Appellee Johan Herman Franken.

"Willem Franken" means the Defendant-Appellee Willem Franken.

"Wiandel" means third party Wiandel Holding B.V.

## STATEMENT OF RELATED CASES

No appeal from this civil action was previously before this or any other appellate court.  Two cases against Defendant-Appellee Hans Franken are pending in foreign jurisdictions, both of which relate to trade secret misappropriation.  One is a civil action filed by Plaintiff-Appellant ABB Turbo Systems AG in the District Court of The Hague in The Netherlands relating to trade secret misappropriation occurring outside of the United States (Case No. C/09/460545, Dkt. No. 14/251). The other is a criminal investigation in Switzerland and, supporting the Swiss investigation through judicial assistance, The Netherlands.

## JURISDICTIONAL STATEMENT

On January 6, 2014, the District Court entered judgment granting-in-part TurboUSA and Willem Franken's motion to dismiss ABB's amended complaint for patent infringement and trade secret misappropriation, in particular dismissing with prejudice ABB's trade secret claims against all defendants.  (A32-39.)  ABB moved for entry of partial final judgment pursuant to Fed. R. Civ. P. 54(b), (A678-81, 686-90), which the District Court denied on January 31, 2014, (A60-61 Dkt. 138).  ABB and TurboUSA settled the remaining claims for patent infringement, and moved for entry of an order and judgment by consent pursuant to Fed. R. Civ. P. 41(a)(2) and 54(b).  (A691-98.)  On February 21, 2014, the District Court entered final judgment and closed the case.  (A27-31.)  On March 12, 2014, ABB

1

filed a notice of appeal.  (D.I. 1-2 at 27-28.)  This appeal is timely.  *See* Fed. R. App. P. 4(a)(1)(A).

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1367(a), and 1338(a).  This Court has jurisdiction pursuant to 28 U.S.C. § 1295.  *See Zenith Elecs. Corp. v. Exzec, Inc*., 182 F.3d 1340, 1346 (Fed. Cir. 1999).

## STATEMENT OF THE ISSUES

1.    Whether the District Court erred in dismissing ABB's trade secret claims, where ABB alleged well-pleaded facts supporting each element of its causes of action under the Florida Uniform Trade Secrets Act, FLA. STAT. § 688.001 *et seq*.

2.    Whether the District Court erred in dismissing ABB's trade secret claims on the basis that ABB had not taken reasonable steps to protect its trade secrets pursuant to FLA. STAT. § 688.002(4)(b), where the District Court declined to accept as true ABB's well-pleaded facts alleging the specific and reasonable efforts ABB made to protect its trade secrets.

3.    Whether the District Court erred in dismissing ABB's trade secret claims on the basis of Appellees' affirmative defense of statute of limitations, where ABB's amended complaint provides no basis for finding that the limitations period has run.

4.    Whether the District Court erred in failing to grant ABB's request for leave to amend.

## STATEMENT OF THE CASE

### I.    OVERVIEW

This lawsuit began as a patent infringement action against two companies, TurboNed and TurboUSA.  In its original complaint, ABB accused TurboNed and TurboUSA of willfully infringing two patents relating to the design of its turbochargers.  (A68-75.)  As one basis for its allegation that the infringement was willful, ABB alleged that one of its former employees, Carlos Mas, had improperly obtained and transferred to TurboUSA confidential information relating to ABB parts embodying the inventions of its asserted patents.  (A67-68.)

After filing its original complaint, ABB received information indicating that TurboNed's former owner and TurboUSA's current ultimate owner, Hans Franken, and TurboUSA's current president, Willem Franken, had collaborated in the covert misappropriation of ABB's trade secrets concerning the design, manufacture, servicing, and pricing of its turbochargers and parts thereof.  (*See* A257, 261, 265, 343.)  Hans Franken is Willem Franken's father.  (A364 ¶ 50.)

ABB moved for leave to file an amended complaint against the companies and the Frankens.  (A53 Dkt. 73.)   TurboUSA opposed, arguing that the amendment would be futile because ABB's trade secret claims were barred by the

3

applicable statute of limitations under Florida law. (*See* A329-33.) ABB responded that denial of leave to amend on this basis would be improper because ABB had filed its trade secret claims within the statute of limitations, and the allegations as set forth in ABB's amended complaint provided no basis for finding that the limitations period had run. (*See* A343-45.)

The District Court granted ABB leave to file its amended complaint. (A54 Dkt. 80.) TurboNed, having filed for bankruptcy under new ownership, (A315), reached a stipulation with ABB and was dismissed shortly after, (A55 Dkts. 86 & 88). TurboUSA and Willem Franken then moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6). (A393.) Hans Franken thereafter separately moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (*See* A434; A451.)

Both motions challenged ABB's trade secret claims on the same affirmative defense of statute of limitations that TurboUSA had previously and unsuccessfully raised in opposition to ABB's motion for leave to file an amended complaint. (*See* A405-08; A456-58.) They also challenged the sufficiency of ABB's pleadings. (*See* A400-05; A454-56.) Without conducting a hearing on the motions, the District Court granted-in-part TurboUSA and Willem Franken's motion and dismissed the trade secret claims against all defendants, with prejudice. (A32-39.) Hans Franken's separate motion to dismiss was denied as moot. (A34 n.3.)

4

The District Court held that either ABB's trade secret claims were barred by the statute of limitations, or ABB had failed to protect its trade secrets. (A37-38.) Specifically, the District Court first held that "Plaintiffs' claims are past due because, with reasonable diligence, the misappropriations should have been discovered prior to 2012." (A37.) In the alternative, the District Court further held that "it would seem highly unlikely that the Trade Secrets were the subject of reasonable efforts to protect their secrecy or that Plaintiffs, as they contend, were actually restricting physical and electronic access to the information and taking other protective measures." (A37-38.) The District Court also appeared to hold, in a footnote, that ABB "failed to state a claim for relief that is plausible on its face" because ABB's trade secret allegations were "vague and devoid of dates, facts, and specifics." (*See* A38 n.6.)

ABB and TurboUSA settled the remaining claims for the infringement by TurboUSA of ABB's patents, and moved for entry of judgment by consent. (A691.) The judgment included a permanent injunction barring TurboUSA from infringing the asserted patents. (A696-97.) With the patent claims resolved and the trade secret claims dismissed, the District Court entered final judgment and closed the case. (A27-31.) This appeal of the District Court's dismissal of ABB's trade secret claims followed.

5

## II.   RELEVANT FACTS

### A.   The Parties

#### 1.  ABB and Its Intellectual Property

ABB designs, manufactures, sells, and services exhaust gas turbochargers for diesel and gas engines.  (A358 ¶ 25.)  Its turbochargers are used worldwide to power large, ocean-going vessels and power plants, amongst other applications.  (*Id.*; A359 ¶ 31.)  ABB's most important market segments include marine and power plant applications.  (*Id.*)

Over the years, ABB has invested substantially in the research and development of turbocharger technology.  (A358-59 ¶ 26.)  ABB's areas of focus include thermodynamics, aerodynamics, structural mechanics, blade mechanics and dynamics, and rotor dynamics.  (*Id.*)  ABB has received multiple patents in these fields, including the two patents it originally asserted in this lawsuit.  (*Id.*)  ABB has also developed trade secrets that are vital to the design, manufacture, servicing, and pricing of ABB turbochargers and parts ("ABB's Turbocharger Trade Secrets").  (A359-60 ¶ 32.)

Specifically, ABB's Turbocharger Trade Secrets include (i) highly confidential assembly and production drawings, models, and other schematics for and data relating to its turbochargers, (*id.*); (ii) manufacturing and working instructions that include detailed information on the design, purpose, and

6

production of ABB turbochargers and parts, their maintenance and servicing, and process information for disassembly and reassembly of ABB turbochargers, (*id.*); (iii) training and other instructional materials that include detailed information destined to educate service engineers on the maintenance and servicing of ABB turbochargers and parts, (*id.*); (iv) specifications and data for specific ABB turbocharger installations, including detailed information about the users, rating plate information, and specific applications, (*id.*); and (v) price lists containing references between part identification numbers, drawing numbers, parts specifications, and prices for every individual ABB turbocharger part, (*id.*).

ABB's Turbocharger Trade Secrets include precise dimensions, measurements, tolerances, designs, formulas, compositions, techniques, technical data, and other information. (A360-61 ¶ 33.) ABB's trade secrets are neither generally known nor readily ascertainable. (A361 ¶ 34.) ABB's trade secrets cannot be reasonably obtained by reverse engineering ABB's turbocharger parts. (*Id.*)

ABB's Turbocharger Trade secrets are the subject of significant efforts by ABB to maintain their secrecy, including: (i) imposing confidentiality and nondisclosure obligations on ABB employees who have access to the trade secrets; (ii) marking documents containing trade secrets with confidentiality designations and other indicia prohibiting their reproduction or dissemination; and/or (iii)

7

restricting physical and electronic access to the trade secrets. (A361 ¶ 35; A381-82 ¶ 163.)

ABB derives significant and independent economic value from its Turbocharger Trade Secrets. (A361 ¶ 34; A382 ¶ 164.) Access to ABB's Turbocharger Trade Secrets would enable ABB's competitors, like TurboUSA, TurboNed, and other companies under the Frankens' control, to make, sell, and install unauthorized copy parts and to provide connected services. (A361 ¶ 34; A382 ¶ 164.)

## 2. ABB's Allegations Regarding TurboNed, TurboUSA, and the Frankens[1]

Hans Franken is a former employee of ABB. (A362 ¶ 36.) He worked in ABB's turbocharger business for seventeen years. (*Id.*) He left in 1986 to head TurboNed in the Netherlands. (*Id.*) Under Hans Franken's leadership, TurboNed became one of the world's largest suppliers of non-OEM turbocharger parts. (*Id.* ¶¶ 37-40.) TurboNed had over thirty support stations worldwide. (*Id.* ¶ 42.) TurboNed used these support stations to supply parts for, *inter alia*, the servicing of ABB turbochargers in marine and power plant applications. (*Id.*)

---

[1] Because ABB's allegations must be accepted as true at the pleadings stage, they are set forth herein as such.

TurboUSA was one of these support stations. (A364 ¶ 57.) Hans Franken established TurboUSA in Florida in the 1990s. (A363 ¶ 46.) His son, Willem Franken, is the president of TurboUSA. (A364 ¶ 51.) Like TurboNed, TurboUSA provides turbocharger parts and services for the marine and power plant industries. (A364 ¶ 57.) Prior to TurboNed's bankruptcy, TurboUSA's parts came from TurboNed. (A363 ¶ 43; A364 ¶ 57.)

In 2009, Hans Franken sold TurboNed to a company called Fortis Private Equity Holding Nederland B.V. ("Fortis"). (A362 ¶¶ 37-38; A366 ¶ 65.) Fortis subsequently came under control of the ABN AMRO bank. (A261.) The sale included a multi-million Euro loan from Hans Franken to TurboNed. (A366 ¶ 65.) The loan would be repaid only if TurboNed met certain earnings requirements following the sale. (*Id.*)

Hans Franken used his personal and professional relationships with Willem Franken and TurboUSA to ensure that those requirements were met. (*See* A366 ¶¶ 66-68; A367 ¶ 69; A370 ¶ 98.) First, Hans Franken obtained full ownership control of TurboUSA in 2009. (A364 ¶¶ 54-55.) Specifically, Wiandel Holding B.V. ("Wiandel") obtained a 100% ownership stake in TurboUSA. (A364 ¶ 54.) Hans Franken is the sole owner of Wiandel. (*Id.* ¶ 55.) Prior to that, TurboUSA was owned in part by Hans Franken, Willem Franken, Nestor Nestoros, and a trust established for the benefit of the Franken family. (*Id.* ¶ 56.)

9

Having obtained ownership of TurboUSA through Wiandel, Hans Franken used his control over TurboUSA to help meet the earnings requirement for TurboNed.  (*See* A366 ¶¶ 66-68; A367 ¶ 69; A370 ¶ 98.)  Hans Franken manipulated the prices for parts that TurboUSA paid to TurboNed such that TurboUSA paid higher prices than it would have in an arm's length deal.  (A366 ¶¶ 66-67; A367 ¶ 69.)  By using TurboUSA to inflate TurboNed's sales figures, Hans Franken ensured that TurboNed's sale to Fortis completed and his loan was repaid.  (*Id*. ¶ 68.)  TurboNed is now bankrupt.  (A315.)

### B.    ABB's Allegations Regarding Misappropriation of ABB's Turbocharger Trade Secrets

Each of TurboUSA, Hans Franken, and Willem Franken misappropriated, and participated in a conspiracy to misappropriate, ABB's Turbocharger Trade Secrets, and benefitted from that misappropriation in the United States.  (A385 ¶ 179.)

### 1.    Hans Franken

Hans Franken, personally and through TurboNed, improperly acquired, and then disclosed and used, ABB's Turbocharger Trade Secrets.  Hans Franken and TurboNed sought to obtain ABB's Turbocharger Trade Secrets because they could not obtain such information lawfully, such as by reverse-engineering ABB's turbocharger parts.  (A367 ¶ 74.)

10

To that end, Hans Franken and other persons associated with TurboNed maintained at least one relationship with an ABB employee with access to ABB's Turbocharger Trade Secrets.  (A367 ¶¶ 70-73.)  They used these relationships to obtain ABB's Turbocharger Trade Secrets improperly, in exchange for money and other consideration.  (*Id*. ¶¶ 72-73; A368 ¶¶ 76, 80-82; A369 ¶ 83.)  They also kept these exchanges hidden from ABB and others, including through at least one clandestine meeting in a garage of a hotel in Zurich, Switzerland.  (A368 ¶¶ 76-82; A369 ¶ 83.)  Hans Franken also employed electronic, telephone, and postal means for facilitating these improper acquisitions of ABB's Turbocharger Trade Secrets. (A368 ¶ 82.)

Once improperly acquired, Hans Franken, himself and through TurboNed, disclosed and used ABB's Turbocharger Trade Secrets to their benefit in the United States.  (A383 ¶¶ 168-69.)  TurboNed trafficked in unauthorized copies of turbocharger components made using ABB's Turbocharger Trade Secrets.  (A362 ¶ 41.)  TurboNed used ABB's Turbocharger Trade Secrets to manufacture, have manufactured, service, and/or have serviced turbocharger parts, and to offer and provide services in connection with such parts and/or on ABB Turbochargers. (A370 ¶ 99.)

Hans Franken, himself and through TurboNed, also disclosed ABB's Turbocharger Trade Secrets to TurboUSA in the United States.  (A383 ¶¶ 168-

11

169.)  Hans Franken directed telephone, email, and facsimile communications to Willem Franken and TurboUSA in Florida relating to the disclosure and use of ABB's Turbocharger Trade Secrets.  (A370 ¶ 100.)  TurboNed also supplied TurboUSA with both components made using ABB's Turbocharger Trade Secrets and documents containing ABB's Turbocharger Trade Secrets.  (A363 ¶ 43.)  Further, TurboNed used ABB's Turbocharger Trade Secrets to train TurboUSA's service engineers.  (*Id.*)

Hans Franken knew that he had acquired ABB's Turbocharger Trade Secrets via improper means.  (A383 ¶ 169.)  Hans Franken and TurboNed obtained ABB's Turbocharger Trade Secrets without the knowledge or consent of ABB's management.  (A369 ¶ 84.)  Further, Hans Franken and TurboNed employees concealed their misappropriation through clandestine meetings and exchanges.  (A367-68 ¶¶ 70-82.)  These TurboNed employees included: Rogier Draiijer, Chris Aerts, Ton Valken, Erik Erkens, Manon Gort, Koos Halbe, and Jolanda Kaptein.  (A369 ¶¶ 86-92.)  TurboNed employees also altered some of the improperly obtained documents containing ABB Turbocharger Trade Secret by replacing references to ABB with references to TurboNed.  (A370 ¶¶ 96-97.)  These alterations were made to conceal the documents' true origin, and to misrepresent that they originated from TurboNed.  (*Id.* ¶ 98.)

12

## 2. Willem Franken and TurboUSA

TurboUSA and Willem Franken also misappropriated ABB's Turbocharger Trade Secrets through their acquisition, disclosure, and/or use of the same in the United States.

TurboUSA and Willem Franken acquired ABB's Turbocharger Trade Secrets from Hans Franken via telephone, email, and facsimile communications. (A370 ¶ 100.)  These unauthorized disclosures from Hans Franken to TurboUSA and Willem Franken involved original assembly and production drawings of ABB turbocharger parts, detailed parts specifications of ABB turbochargers installed in the field, and other information containing ABB's Turbocharger Trade Secrets. (A372 ¶ 109.)

TurboUSA and Willem Franken also disclosed and used ABB's Turbocharger Trade Secrets in the United States.  (A382-83 ¶ 167; A383 ¶ 170.) Willem Franken disclosed ABB's Turbocharger Trade Secrets to persons associated with TurboUSA in Florida.  (A371 ¶ 104.)  Further, TurboUSA provides turbocharger parts made using ABB's Turbocharger Trade Secrets.  (A364 ¶ 57.) For example, TurboUSA makes, uses, offers to sell, sells, and/or imports unauthorized copies of ABB turbocharger parts, including components made using ABB's Turbocharger Trade Secrets.  (A365 ¶ 59.)  TurboUSA also claimed on its website that it had "developed a comprehensive computer search database that

13

contains part specifications for most ABB turbochargers." (A365 ¶ 60.) TurboUSA's database contains ABB Turbocharger Trade Secrets, including information regarding the installation and servicing of ABB components, which database TurboUSA continues to use to promote its business. (*Id.* ¶¶ 61-62.)

TurboUSA and Willem Franken knew that Hans Franken and TurboNed acquired ABB's Turbocharger Trade Secrets improperly. (A382-83 ¶ 167; A383 ¶ 170.) They obtained ABB's Turbocharger Trade Secrets without the knowledge or consent of ABB's management. (A371 ¶ 107.) The strong familial and financial relationship with Hans Franken speaks to TurboUSA's and Willem Franken's knowledge that Hans Franken and TurboNed did not acquire ABB's Turbocharger Trade Secrets lawfully. (*See* A385 ¶ 179.)

Hans Franken and Willem Franken, including through TurboUSA, worked together to use ABB's Turbocharger Trade Secrets with the objective of financial gain for the Franken family. (*Id.*) Each of Hans Franken, Willem Franken, and TurboUSA used and continue to use ABB's Turbocharger Trade Secrets to gain an unfair competitive advantage against ABB. (A384 ¶¶ 173-74; A385 ¶ 180.)

14

**C.    ABB's Discovery of the Trade Secret Misappropriations**

**1.    ABB Learned of the Appellees' Misappropriations After Filing Its Original Complaint**

ABB filed its original complaint for patent infringement on June 13, 2012. (A44 Dkt. 1; A63.)  One month later, a former TurboNed employee reported to ABB information about the theft of ABB's Turbocharger Trade Secrets by Hans Franken.  (A425-26.)  The following month, a Dutch court issued a judgment in an action by TurboNed against Hans Franken and Wiandel.  (A261-63.)  The judgment revealed that TurboNed's new management was concerned about the provenance of certain assembly drawings and models found in TurboNed's possession.  (*Id.*)[2]

In October 2012, ABB filed a civil action in The Netherlands against TurboNed alleging that TurboNed's prior managers and shareholders had misappropriated ABB's trade secrets.  (A315.)  Specifically, ABB alleged that TurboNed's prior managers and shareholders had engaged in the "unauthorized acquisition of highly confidential manufacturing-processes, specifications and trade information." (*Id.*)

This prompted TurboNed's new management to conduct a forensic survey of TurboNed's records and past business practices, which "confirmed certain material

---

[2] The filings and submissions leading to the judgment were not public.  (A262 n.6.)

allegations of ABB." (*Id.*)  TurboNed's new management decided "to terminate with immediate effect the trade in all ABB-related equipment and parts," ultimately leading to TurboNed's "inability to fulfill its payment obligations." (*Id.*)  On December 7, 2012, TurboNed publically announced that it was bankrupt and had "terminated its business activities with immediate effect." (*Id.*)

### 2. ABB Promptly and Timely Moved for Leave to File Its Amended Complaint

These events, beginning with the former TurboNed employee's disclosures to ABB in July 2012, triggered ABB's trade secret claims against the Frankens, TurboNed, and TurboUSA.  On December 21, 2012, ABB timely sought leave to amend its complaint in the Middle District of Florida to include trade secret misappropriation allegations.  (A47 Dkt. 38.)  The case was transferred to the Southern District of Florida before ABB's motion was resolved.  (A48 Dkt. 43.)  On May 28, 2013, ABB again timely sought leave to amend its complaint in the Southern District of Florida.  (A53 Dkt. 73.)

TurboNed did not oppose.  TurboUSA opposed on the bases of undue delay, prejudice, and futility.  (A324.)  TurboUSA argued that amendment was futile because (1) the statute of limitations for ABB's trade secret claims had run, and (2) ABB's trade secret claims lacked specificity.  (*See* A329-33.)  The District Court rejected these arguments, and allowed the amendment.  (A54 Dkt. 80.)

16

TurboUSA and Willem Franken then moved to dismiss the amended complaint.  (A56 at Dkt. 93.)   In doing so, they relied, in relevant part, on substantially the same statute of limitations and futility arguments advanced in TurboUSA's opposition to ABB's motion for leave to amend.  (*Compare* A329-33 *with* A400-08.)   Further, they argued that ABB did not sufficiently plead trade secret misappropriation in part because ABB failed to account for the acts of its "high-level employees."  (A401-02.)[3]   Hans Franken also moved to dismiss the amended complaint on these same bases advanced by TurboUSA and Willem Franken in their briefing, including regarding ABB's "high-level employees."  (*See* A454-58; A625.)

In response, ABB pointed out that the District Court had already dispensed with these theories in granting ABB leave to amend its complaint, and further that ABB had specifically pleaded facts supporting its trade secret misappropriation allegations.  (A421-29.)   ABB also noted that its amended complaint contained no factual allegations regarding "high level employees."  (A422 n.5.)

---

[3] This reference to "high-level employees" also appeared in TurboUSA's response in opposition to ABB's motion for leave to amend.  (A332.)   In its reply, ABB pointed out that TurboUSA lacked any support for this statement.  (A344 n.3.)

On January 6, 2014, the District Court granted-in-part TurboUSA and Willem Franken's motion to dismiss, (A37-38), and denied Hans Franken's motion to dismiss as moot, (A34 n.3).

## SUMMARY OF THE ARGUMENT

The District Court erred in finding ABB's trade secret allegations did not meet the *Twombly/Iqbal* plausibility standard. The Supreme Court's plausibility standard requires well-pleaded facts for each element of a cause of action so that the court can draw a reasonable inference that the defendant is liable for the misconduct alleged. ABB amply satisfied the plausibility standard by alleging well-pleaded facts supporting each element of its causes of action. At the very least, prior to dismissing ABB's claims with prejudice, the District Court should have granted ABB's request for leave to amend its allegations, with guidance as to why ABB's already-extensive allegations were held to be insufficient.

The District Court also erred in dismissing ABB's trade secret claims on the alternative bases that either they were time-barred, or ABB had failed to take reasonable steps to protect its trade secrets. These issues are governed by separate and independent statutory provisions under Florida law, and are subject to different statutory tests. The District Court erred by conflating them. The fact that a victim of trade secret theft does not learn of that theft for some time despite reasonable diligence is in no way at odds with the assertion that reasonable steps were and

18

have been taken to protect those secrets.  ABB is aware of no case authority prior to this one that so holds, and such a holding only serves to encourage and reward clandestine activity.

The District Court also erred in making a factual finding on the pleadings that ABB had failed to protect its trade secrets.  ABB alleged with specificity its reasonable efforts to protect its trade secrets under Florida law.  The District Court was required to accept ABB's allegations as true, and to draw all reasonable inferences in ABB's favor.  The District erred by finding it "unlikely" that ABB was "actually" employing these efforts, as alleged.  (A37-38.)

The District Court also erred by dismissing ABB's trade secret claims on the alternative basis that they were barred by the statute of limitations.  A statute of limitations bar is an affirmative defense, and a plaintiff is not required to anticipate and negate affirmative defenses in its complaint.  There is nothing on the face of ABB's amended complaint that would warrant the District Court's finding that the limitations period has run.  The District Court erred by considering and basing its decision on factual speculation raised in the motion to dismiss, rather than confining its scope of review to the four corners of ABB's amended complaint. The District Court also failed to accept as true ABB's well-pleaded facts showing that ABB could not have discovered the misappropriations earlier.

## ARGUMENT

## I.    STANDARD OF REVIEW

"Because it raises a purely procedural issue, an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit."  *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc*., 714 F.3d 1277, 1282 (Fed. Cir. 2013) (quotations omitted).   Similarly, this Court reviews decisions to grant or deny leave to amend under the law of the regional circuit.  *See Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1332 (Fed. Cir. 2000).

The Eleventh Circuit reviews *de novo* a court's dismissal of a complaint for failure to state a claim upon which relief can be granted.  *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1335 (11th Cir. 2012).   The Eleventh Circuit reviews a court's decision to grant or deny leave to amend for abuse of discretion.  *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1404 (11th Cir. 1994).

## II.   ABB'S AMENDED COMPLAINT ALLEGES WELL-PLEADED FACTS SUPPORTING EACH AND EVERY ELEMENT OF ITS CAUSES OF ACTION

Fed. R. Civ. P. 8 requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint satisfies this rule if it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quotations omitted).    The rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* (collectively, "*Twombly/Iqbal*") provide a framework for determining whether a complaint satisfies Fed. R. Civ. P. 8 such that it survives a motion to dismiss.    The analysis begins with the elements of the cause of action. *Iqbal*, 556 U.S. at 675.    Then, for each element, the question is whether the allegations in the complaint "contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quotations omitted) (the "plausibility standard").

The causes of action at issue here are found in Counts VII and VIII of ABB's amended complaint.    Count VII alleges trade secret misappropriation by each of TurboUSA, Hans Franken, and Willem Franken.  (A380-84.)  Count VIII alleges civil conspiracy to commit the same.  (A384-85.)  As shown below, ABB's amended complaint sets forth sufficient facts supporting each element of these causes of action to render them plausible under *Twombly/Iqbal*.

### A.    ABB Alleged Well-Pleaded Facts for Each Element of Its Cause of Action for Trade Secret Misappropriations (Count VII)

"The elements of a claim for misappropriation of trade secrets under Florida's Uniform Trade Secrets Act, FLA. STAT. § 688.001 *et seq* are: '(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to known that the secret was improperly obtained or by one who used improper means to obtain it.'" *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1322 (S.D. Fla. 2013) (quoting *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001)).

Each of these requirements has its own set of elements under Florida law, as set forth below.  ABB sufficiently alleged each of these elements.

### 1.    ABB's Turbocharger Trade Secrets are Protectable Under Florida Law as Alleged in ABB's Amended Complaint

FLA. STAT. § 688.002(4) defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  ABB pleaded facts supporting each of these three elements.

22

First, ABB alleged that its Turbocharger Trade Secrets consist of five distinct categories of "information, including a formula, pattern, compilation, program, device, method, technique, or process." FLA. STAT. § 688.002(4). These five categories are:

(i)    assembly and production drawings, models, and other schematics for and data relating to impeller fastening technology, axial sliding bearing technology, and other turbocharger technologies, (A359-60 ¶ 32; A381 ¶ 162);

(ii)    manufacturing and working instructions, with detailed information on the production of ABB turbochargers and parts thereof, and their maintenance and servicing including process information for disassembly and re-assembly of ABB turbochargers and detailed information on components and their purpose and design, (*id.*);

(iii)    training and other instruction materials, with detailed information destined to educate service engineers on the maintenance and servicing of ABB turbochargers and parts thereof, including process information for disassembly and re-assembly of ABB turbochargers and detailed information on components and their purpose and design, (*id.*);

23

(iv)    detailed information on and specifications of a substantial number of individual turbochargers delivered to users and in operation (installed base) including in combination with detailed information on their users, rating plate information and applications, (*id.*); and

(v)    detailed lists (commonly referred to as "price lists") containing references between part identification number, drawing number, parts specifications and price for every individual ABB turbocharger part, (*id.*).

Second, ABB alleged that its Turbocharger Trade Secrets "[d]erive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from [their] disclosure or use." FLA. STAT. § 688.002(4)(a). These trade secrets include precise dimensions, measurements, tolerances, designs, formulas, compositions, techniques, technical data, and other information. (A360-61 ¶ 33; A381 ¶ 162.)  ABB's Turbocharger Trade secrets are neither generally known nor readily ascertainable.  (A361 ¶ 34; A382 ¶ 164.)  Nor can they be reasonably obtained through reverse engineering of ABB's turbocharger parts. (*Id.*)  Access to ABB's Turbocharger Trade Secrets would enable ABB's competitors, like TurboUSA, to make, sell, and install unauthorized copy parts and to provide connected services.  (*Id.*)

24

Third, ABB alleged that ABB's Turbocharger Trade Secrets are "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy." FLA. STAT. § 688.002(4)(b). Those efforts include: (i) imposing confidentiality and nondisclosure obligations on ABB employees who have access to the trade secrets; (ii) marking documents containing trade secrets with confidentiality designations and other indicia prohibiting their reproduction or dissemination; and/or (iii) restricting physical and electronic access to the trade secrets. (A361 ¶ 35; A381-82 ¶ 163.)

These are the paradigm of reasonable efforts. *See*, *e.g.*, *Sensormatic Elecs. Corp. v. Tag Co. US, LLC*, 632 F. Supp. 2d 1147, 1185 (S.D. Fla. 2008) (finding a lack of public availability, requiring confidentiality agreements, and maintenance of confidentiality after employment sufficient under Florida law); *see also Partylite Gifts, Inc. v. MacMillan*, No. 8:10-CV-1490, 2010 U.S. Dist. LEXIS 133440, at *14-15 (M.D. Fla. Nov. 24, 2010) (finding electronic restrictions, "confidential" designations, and requiring confidentiality agreements sufficient under Florida law).

ABB's amended complaint therefore sufficiently alleged that ABB's Turbocharger Trade Secrets are protectable under Florida law.

2.    **Hans Franken, Willem Franken, and TurboUSA Each Misappropriated ABB's Turbocharger Trade Secrets Under Florida Law, as Alleged in ABB's Amended Complaint**

FLA. STAT. § 688.002(2) defines "misappropriation" as the "(a) [a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) [d]isclosure or use of a trade secret of another without express or implied consent by a person who: (1) [u]sed improper means to acquire knowledge of the trade secret; or (2) [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was: (a) [d]erived from or through a person who had utilized improper means to acquire it; (b) [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (c) [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . . ."

ABB sufficiently alleged that each of Hans Franken, Willem Franken, and TurboUSA misappropriated ABB's Turbocharger Trade Secrets.

i.    **ABB Sufficiently Alleged Misappropriation by Hans Franken**

ABB sufficiently alleged that Hans Franken disclosed and used ABB's Turbocharger Trade Secrets in the United States, knowing that they were acquired by improper means and derived through persons who owed ABB a duty to maintain their secrecy. *See* FLA. STAT. § 688.002(2).

26

a.    **ABB Alleged that Hans Franken Disclosed and Used ABB's Turbocharger Trade Secrets**

ABB's allegations reflect that Hans Franken disclosed and used ABB's Turbocharger Trade Secrets in the United States, (A383 ¶ 169), using TurboNed as a mere instrumentality and/or alter ego to disclose and use ABB's Turbocharger Trade Secrets, (A362 ¶¶ 36-39).[4] Those allegations include the following.

Hans Franken disclosed ABB's Turbocharger Trade Secrets in email, telephone, and facsimile communications to Willem Franken and TurboUSA in Florida.  (A370 ¶ 100.)  Hans Franken disclosed ABB's Turbocharger Trade Secrets to TurboUSA through TurboNed by using ABB's Turbocharger Trade Secrets to train TurboUSA's service engineers.  (A363 ¶ 43.)  The ABB Turbocharger Trade Secrets disclosed by TurboNed included working instructions. (*Id.*)

Hans Franken, through TurboNed, used ABB's Turbocharger Trade Secrets in making and servicing turbocharger parts, (A370 ¶ 99), and by supplying such

---

[4] Under well-settled Florida law, corporate officers or directors are liable as actors, not as owners, to the extent their participation in the commission of a tortious act harms a third party.  *Pushko v. Klebener*, 399 Fed. Appx. 490, 497 (11th Cir. 2010); *Int'l Schools Svcs., Inc. v. AAUG Ins. Co.*, No. 10-62115-CIV, 2012 U.S. Dist. LEXIS 153683, at *21 (S.D. Fla. July 25, 2012).  This is separate and apart from a showing necessary for piercing the corporate veil.  *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Ltda.*, No. 09-23248-CIV, 2011 U.S. Dist. LEXIS 122830, at *25-26 (S.D. Fla. Oct. 24, 2011).

unauthorized copies of turbocharger parts to TurboUSA in the United States, (A362-63 ¶¶ 41-43). Hans Franken's disclosure and use of ABB's Turbocharger Trade Secrets was for commercial gain in the United States. (*See* A372 ¶ 113; A383 ¶ 169.)

> **b.    ABB Alleged that Hans Franken Knew or Had Reason to Know He Improperly Acquired ABB's Turbocharger Trade Secrets**

ABB's allegations further reflect that Hans Franken disclosed and used ABB's Turbocharger Trade Secrets knowing that they were acquired by improper means and derived through persons that owed ABB a duty to maintain their secrecy. (A369 ¶ 85; A383 ¶ 169.) Those allegations include the following.

Hans Franken obtained ABB's Turbocharger Trade Secrets without the knowledge or consent of ABB's management. (A369 ¶ 84.) Hans Franken and TurboNed sought to obtain ABB's Turbocharger Trade Secrets because they could not obtain such information lawfully, such as by reverse engineering ABB's turbocharger parts. (A367 ¶ 74.) To that end, Hans Franken and other persons associated with TurboNed maintained at least one relationship with an ABB employee with access to ABB's Turbocharger Trade Secrets. (*Id.* ¶¶ 70, 71.) They used these relationships to obtain ABB's Turbocharger Trade Secrets in exchange for money and other consideration. (*Id.* ¶¶ 72, 73.) At least seven TurboNed

28

employees knew of or participated in the improper acquisition of ABB's Turbocharger Trade Secrets from ABB employees: Rogier Draiijer, Chris Aerts, Ton Valken, Erik Erkens, Manon Gort, Koos Halbe, and Jolanda Kaptein. (A369 ¶¶ 86-92.)

The manner by which Hans Franken acquired these secrets also betrays his knowledge of the impropriety of that acquisition. He made arrangements to buy ABB's Turbocharger Trade Secrets from at least one ABB employee through electronic, telephone, and mail communications, as well as through in-person meetings in Switzerland, Cyprus, and elsewhere. (A367-69 ¶¶ 73-83.) On at least two occasions, a TurboNed employee instructed by Hans Franken delivered envelopes containing money to an ABB employee in exchange for ABB's Turbocharger Trade Secrets. (A368 ¶¶ 75-77.) One of these exchanges occurred in the garage of a hotel in Zurich, Switzerland. (*Id.* ¶¶ 78, 79.)

Finally, Hans Franken made attempts to cover up his possession of ABB's trade secrets. Persons associated with TurboNed altered at least some of the documents improperly obtained from ABB. (A370 ¶ 96.) The documents contained ABB's Turbocharger Trade Secrets, (*id.* ¶ 97), and the alterations included replacing references to ABB with references to TurboNed, (*id.* ¶ 96). TurboNed made these alterations to conceal the documents' true origin, and to

conceal TurboNed's improper possession of ABB's Turbocharger Trade Secrets during Fortis's due diligence prior to the sale of TurboNed. (*Id.* ¶¶ 96, 98.)

Through these well-pleaded facts, ABB sufficiently alleged that Hans Franken disclosed and used ABB's Turbocharger Trade Secrets, knowing that they were acquired by improper means and derived through persons who owed ABB a duty to maintain their secrecy.

### ii.    ABB Sufficiently Alleged Misappropriation by Willem Franken and TurboUSA

ABB sufficiently alleged that Willem Franken and TurboUSA[5] acquired, disclosed, and used ABB's Turbocharger Trade Secrets in the United States, knowing that they were acquired by improper means and derived through persons who owed ABB a duty to maintain their secrecy. *See* FLA. STAT. § 688.002(2). Those allegations include the following.

### a.    ABB Alleged that Willem Franken and TurboUSA Acquired, Disclosed, and Used ABB's Turbocharger Trade Secrets

Willem Franken and TurboUSA acquired ABB's Turbocharger Trade Secrets from Hans Franken and TurboNed by way of email, telephone, and

---

[5] Again, under Florida law, corporate officers or directors are liable as actors, not as owners, to the extent their participation in the commission of a tortious act harms a third party. *See supra* note 4. ABB pleaded that Willem Franken is the president and a director of TurboUSA and, at all salient times, TurboUSA was and is his mere instrumentality and/or alter ego. (A364 ¶¶ 51-53.)

facsimile communications into Florida. (A370-71 ¶¶ 100-102.) ABB's Turbocharger Trade Secrets acquired by Willem Franken and TurboUSA include original assembly and production drawings of ABB turbocharger parts, detailed parts specifications of ABB turbochargers installed in the field, and other information containing ABB's Turbocharger Trade Secrets. (A372 ¶ 109.)

Willem Franken and TurboUSA also disclosed and used ABB's Turbocharger Trade Secrets in the United States. (A371 ¶ 104; A383 ¶ 170.) TurboUSA makes, uses, offers to sell, sells, and/or imports unauthorized copies of ABB turbocharger parts, including components made using ABB's Turbocharger Trade Secrets. (A365 ¶¶ 59, 119.) Willem Franken and TurboUSA also provide services for turbochargers using ABB's Turbocharger Trade Secrets. (A364 ¶ 57.)

TurboUSA's website formerly stated that TurboUSA had "developed a comprehensive computer search database that contains part specifications for most ABB turbochargers." (A365 ¶ 60.) TurboUSA's database contains ABB Turbocharger Trade Secrets, including information regarding the installation and servicing of ABB components. (*Id.* ¶¶ 61-62.) TurboUSA continues to use its database to promote its business. (*Id.* ¶ 61.)

**b.    ABB Alleged that Willem Franken and TurboUSA Knew or Had Reason to Know that ABB's Turbocharger Trade Secrets were Improperly Acquired**

Willem Franken and TurboUSA acquired, disclosed, and used ABB's Turbocharger Trade Secrets knowing that they were acquired by improper means and from persons who owed ABB a duty to maintain their secrecy. (A371 ¶ 106.)

Willem Franken and TurboUSA acquired ABB's Turbocharger Trade Secrets without the knowledge or consent of ABB's management. (*Id.* ¶ 107.) They sought to acquire ABB's Turbocharger Trade Secrets because they could not obtain such information lawfully, such as by reverse engineering ABB's turbocharger parts. (A372 ¶ 110.) To that end, they acquired ABB's Turbocharger Trade Secrets from Hans Franken and TurboNed, (A370-71 ¶¶ 100-102), knowing that they were obtained by espionage, bribery, and inducement of a breach of a duty to maintain secrecy, (A382-83 ¶ 167). The strong familial and financial relationship between Appellees speaks to TurboUSA and Willem Franken's knowledge that Hans Franken and TurboNed did not properly acquire ABB's Turbocharger Trade Secrets. (*See* A385 ¶ 179; *see generally* A362-67 ¶¶ 36-69.) Willem Franken and TurboUSA likewise disclosed and used ABB's Turbocharger Trade Secrets with this knowledge. (A383 ¶ 170.)

32

ABB has therefore sufficiently alleged that Willem Franken and TurboUSA misappropriated ABB's Turbocharger Trade Secrets under Florida law.

### B. ABB Alleged Well-Pleaded Facts for Each Element of Its Cause of Action for Conspiracy to Commit Trade Secret Misappropriation (Count VIII)

"Under Florida law, the elements of a civil conspiracy claim are: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 899 F. Supp. 2d 1318, 1330-31 (S.D. Fla. 2012).  A claim for trade secret misappropriation can serve as the unlawful act.  *See Leedom Mgmt. Grp. v. Perlmutter*, No. 8:11-CV-2108, 2012 U.S. Dist. LEXIS 18562, at *20-21 (M.D. Fla. Feb. 15, 2012).

ABB's amended complaint sufficiently alleges each of these elements.  First, Hans Franken and Willem Franken, and the companies they founded, owned, directed, and/or controlled, including TurboUSA, agreed to participate in a conspiracy with the objective of financial gain for the Franken family.  (A384 ¶ 177; A385 ¶ 179.)  The relationships between and among Hans Franken, Willem Franken, and TurboUSA were both financial and familial.  (A385 ¶ 179.)  Second and third, they agreed to, and each engaged in, the misappropriations of ABB's Turbocharger Trade Secrets, *see supra* § II.A., including through overt acts, (*see*

A365 ¶¶ 59-62; A370 ¶ 99; A372-73 ¶ 114). Fourth, ABB has sustained damages as a result. (A384 ¶¶ 173-74; A361 ¶ 34; A382 ¶ 164; A385 ¶ 180.) Taken together with ABB's other trade secret allegations, these well-pleaded facts are sufficient to establish a cause of action for conspiracy to commit trade secret misappropriation under Florida law.

### C. ABB's Causes of Action for Trade Secret Misappropriations (Count VII) and Conspiracy to Commit the Same (Count VIII) Are Plausible Under *Twombly/Iqbal*

A complaint satisfies the *Twombly/Iqbal* plausibility standard when the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint should allege "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). Although the plausibility standard "does not require detailed factual allegations," *id.* (quoting *Iqbal,* 556 U.S. at 678), the complaint must rise above a "'formulaic recitation of elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

ABB's trade secret and conspiracy allegations contain a level of specificity sufficient to surpass the low *Twombly/Iqbal* plausibility threshold. ABB's amended complaint contains over ninety paragraphs of well-pleaded facts

describing the parties and their relationships, the trade secrets, and the misappropriations. *See supra* §§ II.A., B. Despite this, the District Court summarily found that these allegations were "vague and devoid of dates, facts, and specifics" such that ABB's trade secret claims failed to meet the *Twombly/Iqbal* plausibility threshold. (A38 n.6.)

ABB was thus given insufficient guidance on where the District Court believed ABB's allegations fell short under the *Twombly/Iqbal* plausibility standard. Nor is this a situation where the case law provides such clear guidance. Indeed, the District Court's order relies substantially on cases resolved after the pleadings stage. (*See* A37-38 (citing *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 636 F. Supp. 2d 1283 (M.D. Fla. 2009), decided upon motions for summary judgment following discovery, and *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354 (S.D. Fla. 2012), decided after a bench trial following discovery).) Before dismissing ABB's trade secret claims with prejudice, ABB thus submits that principles of due process dictate that the District Court should have made clear where it believed ABB's allegations fell short, and should have granted ABB's request for leave to amend to allow them to be addressed. (A413; A429.)

## III.  THE DISTRICT COURT'S ALTERNATIVE BASES FOR DISMISSING ABB'S TRADE SECRET CLAIMS TURN ON A MISINTERPRETATION OF FLORIDA LAW

In addition to the plausibility standard under *Twombly/Iqbal*, the District Court also dismissed ABB's trade secret claims on the alternative bases that either ABB's trade secret claims were barred by the statute of limitations, or ABB failed to protect its trade secrets.  "Plaintiffs' claims are past due because, with reasonable diligence, the misappropriations should have been discovered prior to 2012." (A37.)  If not, "it would seem highly unlikely that the Trade Secrets were the subject of reasonable efforts to protect their secrecy or that Plaintiffs, as they contend, were actually restricting physical and electronic access to the information and taking other protective measures." (A37-38.)

This aspect of the District Court's holding conflates two separate provisions of the Florida trade secret statute.  Whether a trade secret is the subject of reasonable efforts to protect its secrecy is an element of a trade secret claim under Florida law.  *See* FLA. STAT. § 688.002(4)(b).  Whether a plaintiff should have discovered a misappropriation through the exercise of reasonable diligence is a separate issue that concerns compliance with the statute of limitations for trade secret claims under Florida law.  *See* FLA. STAT. § 688.007.

The District Court applied these standards incorrectly.  Specifically, the District Court held that if the exercise of reasonable diligence does not reveal a

36

trade secret's theft, then a plaintiff has necessarily failed to exercise reasonable efforts to protect that trade secret.  (*See* A37-38.)[6]  On this rationale, the theft of a protectable trade secret would immediately start the clock for the statute of limitations, because the reasonable efforts necessary to protect a trade secret would necessarily reveal its misappropriation.   Reading the two statutory provisions in this manner would effectively render the following discovery provision of the statute of limitations a nullity: "after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  *See* FLA. STAT. § 688.007.

The District Court's approach is thus contrary to the statute and, to ABB's knowledge, unsupported in the case law.  It is also contrary to sound policy.  The statute appropriately puts the burden on the trade secret claimant to take reasonable steps to protect its secrets.  But the operative word is "reasonable," not absolute. FLA. STAT. § 688.002(4)(b).  The fact that a trade secret thief is able to defeat those measures does not make them unreasonable.  And the statute implicitly recognizes that the theft of trade secrets is rarely open and notorious, and thus expressly contemplates that it may be some time before a vigilant trade secret owner

---

[6] Willem Franken and TurboUSA raised this theory in their reply brief in support of their motion to dismiss ABB's amended complaint, with no supporting case law. (A512.)

discovers that theft.  That is why the clock in FLA. STAT. § 688.007 does not begin

ticking immediately.

In short, the District Court's approach rewards the skillful and covert theft of

trade secrets, and encourages the very activity the statute is intended to discourage.

## IV.    THE DISTRICT COURT ERRED IN FINDING THAT ABB FAILED TO PROTECT ITS TRADE SECRETS

In holding that ABB's trade secrets were not the subject of reasonable

efforts to maintain their secrecy, the District Court declined to accept ABB's well-

pleaded facts as true.  In ruling on a 12(b)(6) motion, the Court "accept[s] as true

the facts alleged in the complaint and construe[s] the facts in the light most

favorable to the plaintiff."  *United States ex rel. Matheny v. Medco Health*

*Solutions, Inc.*, 671 F.3d 1217, 1221 (11th Cir. 2012).  It is thus improper for a

district court to construe a complaint in favor of the defendant.  *See St. George v.*

*Pinellas County*, 285 F.3d 1334, 1337-38 (11th Cir. 2002) (reversing a district

court's dismissal under Rule 12(b)(6) where the district court construed the

complaint in favor of the defendant).

As discussed above, *supra* § II.A.1., ABB's amended complaint sufficiently

alleges that ABB's Turbocharger Trade Secrets are "the subject of efforts that are

reasonable under the circumstances to maintain [their] secrecy."  FLA. STAT. §

688.002(4)(b).    Those    efforts    include:  (i)  imposing  confidentiality  and

nondisclosure obligations on ABB employees who have access to the trade secrets; (ii) marking documents containing trade secrets with confidentiality designations and other indicia prohibiting their reproduction or dissemination; and/or (iii) restricting physical and electronic access to the trade secrets.  (A361 ¶ 35; A381-82 ¶ 163.)

Rather than accept these allegations as true, the District Court made a factual finding against ABB that "it would seem highly unlikely that the Trade Secrets were the subject of reasonable efforts to protect their secrecy or that Plaintiffs, as they contend, were actually restricting physical and electronic access to the information and taking other protective measures."  (A37-38.)  However, once a complaint has adequately stated a claim, that claim "may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.  Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (quotations omitted).

The District Court was thus required to accept ABB's well-pleaded facts as true, and those fact sufficiently allege that ABB's Turbocharger Trade Secrets are the "subject of efforts that are reasonable under the circumstances to maintain its

secrecy." FLA. STAT. § 688.002(4)(b).   The District Court erred in dismissing

ABB's trade secret claims on this ground.

**V.    THE DISTRICT COURT ERRED IN DISMISSING ABB'S TRADE SECRET CLAIMS ON THE BASIS OF APPELLEES' AFFIRMATIVE DEFENSE OF STATUTE OF LIMITATIONS**

The District Court's alternative holding that ABB's trade secrets claims are

time-barred is both premature under Rule 12(b)(6), and contradicted by ABB's

well-pleaded allegations.   "A statute of limitations bar is an affirmative defense,

and plaintiffs are not required to negate an affirmative defense in their complaint."

*La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-846 (11th Cir. 2004)

(quotations omitted), *abrogated on other grounds by Twombly*, 550 U.S. 554.

"Whether an individual, by the exercise of reasonable diligence, should have

known he had a cause of action against the defendant is, ordinarily, an issue of fact

which should be left to the trier of fact." *Jones v. Childers*, 18 F.3d 899, 907 (11th

Cir. 1994) (quotations omitted).   "Not surprisingly, our cases say that a Rule

12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is

apparent from the face of the complaint that the claim is time-barred." *La Grasta*,

358 F.3d at 845 (quotations omitted); *see also Lindley v. City of Birmingham*, 515

Fed. Appx. 813, 815 (11th Cir. Apr. 3, 2013) (citing *La Grasta*).   "The scope of the

review must be limited to the four corners of the complaint." *St. George*, 285 F.3d

at 1337.

40

The District Court held that ABB's trade secret claims were time-barred because ABB should have discovered the misappropriations earlier, finding that "Plaintiffs' claims are past due because, with reasonable diligence, the misappropriations should have been discovered prior to 2012." (A37.) In support, the District Court noted that "Plaintiffs supposedly had high-level employees—senior enough to have trade secret access—having multiple clandestine meetings with direct competitors across the globe, over an extended period of time." (*Id.*) "On these facts, Plaintiffs, had they been exercising reasonable diligence, should have at least had an inkling that something was amiss, at some point after 1987 and prior to 2012." (*Id.*)

As to this issue, the District Court erred on several grounds. First, nothing in ABB's amended complaint supports the District Court's factual finding that ABB's "high-level" or "senior" employees were involved in the misappropriations of its trade secrets. Nor does ABB's amended complaint contain any allegations to support the inference that ABB's "high-level" or "senior" employees necessarily have access to the trade secrets at issue. These speculations were instead injected by Appellees in their motions to dismiss ABB's trade secret claims. (*See* A401-402; A455.) In short, this ground of dismissal was based on unfounded allegations made in briefs and outside of ABB's amended complaint. *See St. George*, 285 F.3d at 1337.

41

Second, there is nothing in ABB's amended complaint that would warrant a finding that ABB was untimely in pursuing its allegations regarding the misappropriation of its trade secrets. This is a statute of limitations issue, and thus an affirmative defense under Fed. R. Civ. P. 8(c). *See La Grasta*, 358 F.3d at 845-46 ("[P]laintiffs are not required to negate an affirmative defense in their complaint." (quotations omitted)). The District Court's holding that the limitations period had run is instead based on a finding against ABB that it, "through reasonable diligence, should . . . have discovered at an earlier date that an employee[, Carlos Mas,] leaving to work for a direct competitor had absconded with valuable business information." (A37.)

However, ABB's allegations about its former employee, Carlos Mas, were in support of ABB's allegations of willful patent infringement, found in its original complaint, which contained no claims for trade secret misappropriation. (A343; *see* A67-68 ¶¶ 27-30 (ABB's original complaint alleging only patent infringement).) Even if ABB had pressed a trade secret claim on the basis of the Mas allegations, that would have constituted an independent trade secret claim, the

timeliness *vel non* of which would be irrelevant to the Franken allegations newly advanced in ABB's amended complaint.[7]

Third, the District Court ruled against ABB on this affirmative defense of Appellees even though the District Court recognized that "Plaintiffs contend they were not aware of the misappropriations until July 2012, when they were revealed by a former TurboNed employee, and that the misappropriations were clandestine such that they could not have been discovered earlier," (A36), and even though ABB's amended complaint supports that position.

Specifically, ABB alleged that the misappropriations were clandestine in nature, and thus they could not have been discovered earlier. ABB alleged that its trade secrets were exchanged for money in secret meetings with TurboNed employees in Switzerland, (A367-68 ¶¶ 70-81), and that at least one meeting took place in the garage of a hotel in Zurich, (A368 ¶ 78). ABB further alleged that, once acquired, steps were taken to conceal the misappropriation of ABB's

---

[7] To be sure, Florida law recognizes that "a continuing misappropriation constitutes a single claim" under the statute of limitations for trade secret claims. FLA. STAT. § 688.007. ABB's amended complaint, however, identifies distinct acts of misappropriation, by different actors, at different times, and involving different trade secrets. (*Compare* § II.A. *with* A373 ¶¶ 115-18.) "Since different trade secrets and combinations of trade secrets are being obtained and disclosed, each event is separate so as to constitute an independent misappropriation." *Emergency Care Res. Inst. v. Guidant Corp.*, No. 06-1898, 2006 U.S. Dist. LEXIS 88416, at *13 (E.D. Pa. Dec. 5, 2006).

Turbocharger Trade Secrets.  (A370 ¶¶ 96-98.)  Persons at TurboNed altered at least some of the documents containing ABB's Turbocharger Trade Secrets to conceal their theft and origin by replacing references to ABB with references to TurboNed.  (*Id.*)  They took these measures to conceal the misappropriations during Fortis's due diligence associated with Hans Franken's sale of TurboNed in 2009.  (*Id.*)  Indeed, even Fortis, which presumably had full access to TurboNed's internal documents, did not uncover the misappropriations until years after the acquisition.  (*See* A315; *see also* A428 n.11.)

The District Court was required to accept these well-pleaded facts as true, and was required to draw all reasonable inferences in ABB's favor.  *Medco Health Solutions*, 671 F.3d at 1221.  At the least, the District Court should not have resolved an affirmative defense based on the statute of limitations where genuine issues of material fact remained.  *C.f. Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1318 (Fed. Cir. 2012) (reversing summary judgment because, *inter alia*, when a plaintiff knew or reasonably should have known of the acts giving rise to a trade secret misappropriation claim is ordinarily a question of fact);[8] *C&F Packing*

---

[8] Finding it unnecessary to decide whether California or Texas law applied because, like FLA. STAT. § 688.007, "both adopted a 'discovery rule' such that claims for trade secret misappropriation accrue for statute-of-limitations purposes when the plaintiff knew or reasonably should have known of the acts that give rise to the claim." *Raytheon Co.*, 688 F.3d at 1316.

*Co. v. IBP, Inc.*, 224 F.3d 1296, 1306-1307 (Fed. Cir. 2000) (remanding for further fact-finding where the record did "not support any definitive conclusion on [a statute of limitations] accrual date").[9]

"A federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). It was thus error for the District Court to have addressed this affirmative defense at all at the pleadings stage, let alone to have resolved it against ABB and dismissed ABB's trade secret claims with prejudice.

## CONCLUSION

For all the foregoing reasons, ABB respectfully requests that this Court reverse the District Court's order granting-in-part TurboUSA and Willem Franken's motion to dismiss, and remand this case for further proceedings.

---

[9] Applying the Kansas Uniform Trade Secrets Act, which, like FLA. STAT. § 688.007, states that a misappropriation claim must be brought within "three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." *C&F Packing Co. v. IBP, Inc.*, 224 F.3d at 1307.

Dated:  May 13, 2014        By *s/Kurt L. Glitzenstein*

Kurt L. Glitzenstein
Fish & Richardson, P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Fax: (617) 542-8906
glitzenstein@fr.com

William R. Trueba, Jr.
Espinosa | Trueba, PL
1428 Brickell Ave., Ste 100
Miami, FL 33131
Telephone: (305) 854-0900
Fax: (855) 854-0900
wtrueba@etlaw.com

*Attorneys for Plaintiffs-Appellants*
*ABB Turbo Systems AG and ABB Inc.*

# Addendum

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-60394-KMM

ABB TURBO SYSTEMS AG
and ABB, Inc.,

      Plaintiffs,

vs.

TURBOUSA, INC.,

      Defendant.

_____/

**FINAL JUDGMENT**

THIS CAUSE came before the Court upon the Joint Motion for Entry of Order and Judgment by Consent (ECF No. 139) filed by Plaintiffs ABB Turbo Systems AG and ABB, Inc. (collectively, "ABB") and Defendant TurboUSA, Inc. ("TurboUSA"). This motion is ripe for review. UPON CONDSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that Parties' Joint Motion for Entry of Order and Judgment by Consent (ECF No. 139) is GRANTED. It is further

ORDERED AND ADJUDGED that the settlement reached by the Parties in this matter is hereby approved as follows:

1.     The foregoing Parties are ordered to comply with all executory terms of the Settlement Agreement entered into between them and dated as of February 4, 2014.

2.     Defendant TurboUSA, its successors and assigns, its agents, servants, employees, and all persons in active concert and/or participation with it, are permanently enjoined from making, using, selling, offering to sell, or importing any product that infringes U.S. Patent No.

6,012,901 ("the '901 patent") or U.S. Patent No. 6,024,495 ("the '495 patent"), including, but not limited to, the following products:

    a.  "Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2" and "TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000," or any products of like kind; and

    b.  "Spare Part Kit 3A"; "Service Kit 3A"; "[part number] 97084"; and "Axial Bearing Kit"; or any products of like kind.

This injunction shall not extend beyond the expiration of the '901 patent, for products that infringe the '901 patent, or beyond the expiration of the '495 patent, for products that infringe the '495 patent.

3.    This Court retains jurisdiction to consider, upon application by any party, any violation of the terms of the Settlement Agreement, this Order, or the Protective Order entered in this action.

4.    The claims alleged in the following counts of the Amended Complaint against TurboUSA are dismissed with prejudice upon entry of this Order and Judgment by Consent:

    a.  Count I (for direct infringement of the '901 patent)
    b.  Count II (for indirect infringement of the '901 patent)
    c.  Count III (for declaratory judgment of infringement of the '901 patent)
    d.  Count IV (for direct infringement of the '495 patent)
    e.  Count V (for indirect infringement of the '495 patent)
    f.  Count VI (for declaratory judgment of infringement of the '495 patent).

5.    Each party shall bear its own costs.

LET EXECUTION ISSUE. The Clerk of Court is instructed to CLOSE this Case.  All pending

motions not otherwise ruled upon are DENIED AS MOOT.

      DONE AND ORDERED in Chambers at Miami, Florida, this 21st day of February, 2014.


Kevin Michael Moore

Digitally signed by Kevin Michael Moore
DN: cn=Kevin Michael Moore, o, ou,
email=k_michael_moore@flsd.uscourts.gov, c=US
Date: 2014.02.21 13:05:10 -05'00'

      K. MICHAEL MOORE
      UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

**Jeannet Santos**

| | |
|---|---|
| **From:** | Erin Alper |
| **Sent:** | Friday, February 21, 2014 2:09 PM |
| **To:** | Jeannet Santos |
| **Subject:** | FW: Activity in Case 0:13-cv-60394-KMM ABB Turbo Systems AG et al v. Turboned Service BV  et al Terminated Case |

**From:** cmecfautosender@flsd.uscourts.gov [mailto:cmecfautosender@flsd.uscourts.gov]
**Sent:** Friday, February 21, 2014 1:47 PM
**To:** flsd_cmecf_notice@flsd.uscourts.gov
**Subject:** Activity in Case 0:13-cv-60394-KMM ABB Turbo Systems AG et al v. Turboned Service BV et al Terminated Case

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Southern District of Florida

### Notice of Electronic Filing

The following transaction was entered on 2/21/2014 at 1:47 PM EST and filed on 2/21/2014
**Case Name:** ABB Turbo Systems AG et al v. Turboned Service BV et al
**Case Number:** 0:13-cv-60394-KMM
**Filer:**
**WARNING: CASE CLOSED on 02/21/2014**
**Document Number:** No document attached

**Docket Text:**
**Civil Case Terminated. (nhl)**

**0:13-cv-60394-KMM Notice has been electronically mailed to:**

Ajit S. Dang    dang@fr.com

Erin P. Alper    alper@fr.com

Jack P. Smith , III    jay.smith@fr.com

1

Jan Douglas Atlas      atlas@kolawyers.com, cardoso@kolawyers.com, way@kolawyers.com

Jeffrey Aaron Backman      jeffrey.backman@gmlaw.com, lauren.sepot@gmlaw.com

Jorge Tadeo Espinosa      Jespinosa@etlaw.com, jed02@bellsouth.net, lmansen@etlaw.com

Kurt L. Glitzenstein      glitzenstein@fr.com

Rebecca Faith Bratter      Rebecca.Bratter@gmlaw.com, melody.langley@gmlaw.com

Richard Wayne Epstein      richard.epstein@gmlaw.com, maite.alvarez@gmlaw.com,
maria.salgado@gmlaw.com, mary.clark@gmlaw.com, rebecca.bratter@gmlaw.com,
scott.wellikoff@gmlaw.com

Samantha Tesser Haimo      tesser@kolawyers.com, way@kolawyers.com

William Rafael Trueba , Jr      wtrueba@etlaw.com, dbram@etlaw.com, lmansen@etlaw.com,
tfigueroa@etlaw.com

**0:13-cv-60394-KMM Notice has not been delivered electronically to those listed below and will be
provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-60394-KMM

ABB TURBO SYSTEMS AG
and ABB, Inc.,

      Plaintiffs,

vs.

TURBOUSA, INC., *et al.*

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon the Motion to Dismiss filed by Defendants TurboUSA, Inc. and Willem Franken (ECF No. 93). Plaintiffs ABB Turbo Systems AG and ABB Inc. responded (ECF No. 99) and Defendants replied (ECF No. 105). UPON CONSIDERATION of the Motion, the Response, the Reply, the pertinent portions of the Record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND

The Parties to this action are manufacturers of engine turbochargers and turbocharger components. Am. Compl. (ECF No. 81), at ¶¶ 25, 41, 57. Plaintiffs ABB Turbo Systems AG and ABB Inc. (collectively "ABB") are a Swiss and a Delaware corporation, respectively. Id. at ¶¶ 1–2. ABB owns multiple patents pertaining to turbocharger technology, two of which are at issue in this this Case. Id. at ¶¶ 26–29. In addition, ABB maintains confidential business information pertaining to the assembly and embodiment of its patent technology, the production and servicing of turbocharger parts, as well as product specifications, price lists, and additional

information.  Id. at ¶ 32.  ABB contends that this information ("the Trade Secrets") constitutes protected trade secrets.  See id. at ¶¶ 32–33.

Defendants TurboNed Service B.V. ("TurboNed") and TurboUSA, Inc. ("TurboUSA") are a Dutch limited liability company and a Florida corporation, respectively.  Id. at ¶¶ 3–4.[1] Defendants Johan Herman Franken ("Hans Franken") and Willem Franken are citizens of the Netherlands and Florida, respectively.  Id. at ¶¶ 5–6.  Hans Franken established TurboNed in 1986, after having been employed by ABB for approximately 17 years, and managed TurboNed until its sale in 2009.  Id. at ¶¶ 36–38.  Hans Franken established TurboUSA in the mid-1990s and currently owns TurboUSA.  Id. at ¶¶ 46, 54–55.  Hans' son Willem Franken is the president of TurboUSA.  Id. at ¶ 51.

Plaintiffs initiated this action in June 2012 against TurboNed and TurboUSA for patent infringement.  See generally Compl. (ECF No. 1) (Counts I–VI).[2]  Subsequently, this Court permitted Plaintiffs to file an Amended Complaint.  See Paperless Order (ECF No. 80).  The Amended Complaint introduced claims for Misappropriation of Trade Secrets and Civil Conspiracy to Misappropriate Trade Secrets (Counts VII and VIII) and added two new Defendants (Hans and Willem Franken) solely with respect to the new claims.  See generally Am. Compl.

Defendants TurboUSA and Willem Franken have now moved to dismiss the Amended Complaint.  See generally Mot.  Defendants contend that the complaint improperly distinguishes the Defendants from one another in violation of Fed. R. Civ. P. 8(d)(1).  Mot., at 4.  In addition,

---

[1] This action has been dismissed without prejudice with respect to TurboNed.  See Paperless Order (ECF No. 88).  TurboNed is currently in bankruptcy proceedings in the Netherlands.  See Mot., at 2.
[2] This action was initially filed in the Middle District of Florida and was later transferred to this District.  See Order Granting Mot. to Transfer Venue (ECF No. 42).

Defendants contend that Willem Franken is not liable independent of TurboUSA. <u>Id.</u> at 6–7. Defendants further argue that the trade secret claims are insufficiently pleaded, are barred by the statute of limitations, and fail to state a claim for which relief can be granted. <u>Id.</u> at 8–15.[3]

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. <u>See</u> <u>Milburn v. United States</u>, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. <u>SEC v. ESM Grp., Inc.</u>, 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Id.</u> at 679.

A complaint must also contain enough facts to indicate the presence of the required elements. <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers . . . 'a formulaic recitation of elements of a cause of action will not do.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). "[C]onclusory allegations,

---

[3] Defendant Hans Franken has filed a separate motion to dismiss in this matter. <u>See</u> Motion to Dismiss (ECF No. 103). In addition to raising arguments addressed by TurboUSA and Willem Franken, Hans Franken has raised a personal jurisdiction defense. <u>See id.</u> As this Order closes this case with respect to Hans Franken, the motion (ECF No. 103) is moot and it is not necessary for this Court to address the personal jurisdiction issue.

3

unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

**III. ANALYSIS**

This Court first turns to Plaintiffs' trade secret claims.   To show misappropriation of trade secrets, Plaintiffs must demonstrate that they "possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." Hennegan Co. v. Arriola, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012) (citations and internal quotation marks omitted).[4]   Trade secrets "must derive economic value from not being readily ascertainable by others and. . . [if] the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret protection." Id. (citations and internal quotation marks omitted).[5]   The action has a three year statute of limitations that begins to run "after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." FLA. STAT. § 688.007. "[A] continuing misappropriation constitutes a single claim." Id.

Plaintiffs' allegations are general in nature. See Am. Compl., at ¶¶ 70–119. Plaintiffs do not provide specific dates, but contend that the activity in question largely occurred during Hans Franken's management of TurboNed between 1986 and 2009. Id. at ¶¶ 36–37, 70.  Plaintiffs

---

[4] "The party claiming trade secret protection has the burden to show how the information qualifies as a trade secret." Arriola, 855 F. Supp. 2d at 1360.
[5] Plaintiffs contend that the Trade Secrets "are the subject of significant efforts to maintain their secrecy, including imposing confidentiality and nondisclosure obligations on ABB employees that have access to ABB's Turbocharger Trade Secrets, marking documents constituting ABB's Turbocharger Trade Secrets with confidentiality designations and/or other indicia prohibiting the reproduction or dissemination of such documents or information to third parties, restricting physical and electronic access by third parties to ABB's Turbocharger Trade Secrets, and other reasonable measures." Am. Compl., at ¶ 163.

4

allege that TurboNed employees maintained relationships with ABB employees with access to the Trade Secrets, and obtained the Trade Secrets for money.  Id. at ¶¶ 71–73, 86–92 (Plaintiffs identify seven TurboNed employees who may have been involved).  On one occasion "Hans Franken instructed a TurboNed employee to travel to Switzerland to retrieve 200 to 300 kilograms of new type bearing housings and original ABB parts from an ABB employee."  Id. at ¶ 80.  Exchanges may also have occurred in Cyprus and Florida.  Id. at ¶¶ 82, 111.  Plaintiffs further contend that TurboUSA and Willem Franken have been complicit and that the Defendants continue to utilize the Trade Secrets to the present day.  Id. at ¶¶ 101–05.  Separately, and more specifically, Plaintiffs contend that former ABB engineer Carlos Mas provided TurboUSA with stolen confidential data from ABB's computer systems when he was hired by TurboUSA in 2008.  Id. at ¶¶ 115–17.

Plaintiffs filed the initial Complaint in this matter in June 2012 and the trade secret claims in July 2013.  See id.; Compl.  However, Plaintiffs contend they were not aware of the misappropriations until July 2012, when they were revealed by a former TurboNed employee, and that the misappropriations were clandestine such that they could not have been discovered earlier.  Resp., at 14–15.  Defendants contend that the allegations are plausibly explained by the Defendants' understanding that they were engaged in legitimate transactions to purchase information from authorized ABB representatives, and further argue that Plaintiffs have failed to demonstrate that the information was improperly obtained.  Mot., at 9.

Plaintiffs' claims rest on thin ice.  Plaintiffs contend that a non-specific set of trade secrets were improperly obtained, by largely unascertainable individuals, on multiple occasions, between 1987 and the present, with at least one occurrence in 2008.  Given that Plaintiffs contend that the misappropriations were ongoing, Plaintiffs had three years to take action from

5

the initiation of each ongoing misappropriation, beginning from the discovery of the misappropriation, or the date by which Plaintiffs by reasonable diligence should have discovered the misappropriation.  See FLA. STAT. § 688.007.  For instance, if Plaintiffs had discovered Carlo Mas' data theft in 2008, the claim would be past due as it was not filed until 2013.  See Am. Compl. at ¶¶ 115–17.  More broadly, Plaintiffs contend that they only discovered the entire breadth of the misappropriations—which occurred over nearly thirty years—in 2012.  See Resp., at 14–15.

Plaintiffs' claims are not well-formulated, although this conclusion stems from alternative perspectives.  In one alternative, Plaintiffs' claims are past due because, with reasonable diligence, the misappropriations should have been discovered prior to 2012.  The Plaintiffs supposedly had high-level employees—senior enough to have trade secret access— having multiple clandestine meetings with direct competitors across the globe, over an extended period of time.  On these facts, Plaintiffs, had they been exercising reasonable diligence, should have at least had an inkling that something was amiss, at some point after 1987 and prior to 2012.  Similarly, with respect to Carlos Mas, it is not evident to this Court why Plaintiffs, through reasonable diligence, should not have discovered at an earlier date that an employee leaving to work for a direct competitor had absconded with valuable business information.  See Knights Armament Co. v. Optical Systems Technology, Inc., 636 F. Supp. 2d 1283, 1295–96 (M.D. Fla. 2009).

However, even if this Court were to accept Plaintiffs' argument that they could not have discovered the misappropriations by exercise of reasonable diligence, a second problem would arise.  If this argument were to be accepted, it would seem highly unlikely that the Trade Secrets were the subject of reasonable efforts to protect their secrecy or that Plaintiffs, as they contend,

were actually restricting physical and electronic access to the information and taking other protective measures. See Am. Compl., at ¶ 163; Hennegan Co. v. Arriola, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012). The enormity of the scope of the misappropriations—in terms of geographic area and number of individuals involved—are simply inconsistent with the secrecy measures required to protect trade secrets. See Arriola, 855 F. Supp. 2d at 1360. In this regard, Plaintiffs have failed to state a claim for which relief can be granted, as the exercise of reasonable security measures are an essential component of the claim. See id.[6] Accordingly, Plaintiffs' claim for Misappropriation of Trade Secrets lacks merit and shall be dismissed from this action.[7] As no further counts remain pending against Hans and Willem Franken, this action shall be closed with respect to these Defendants.[8] The additional relief sought by Defendants is otherwise denied.[9]

---

[6] This Court does not foreclose the theoretical possibility that there were some set of trade secrets, subject to reasonable secrecy measures, that were misappropriated, to which Plaintiffs would not have been alerted with the exercise of reasonable diligence. However, if such an allegation can be made out, Plaintiffs have failed to state it. On the whole, Plaintiffs' claims regarding the multi-decade global misappropriations are vague and devoid of dates, facts, and specifics. In this regard, Plaintiffs have failed to state a claim for relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

[7] Plaintiffs' claim for Civil Conspiracy to Misappropriate Trade Secrets is therefore also without merit as it cannot survive the dismissal of the underlying claim. See Behrman v. Allstate Life Ins. Co., 388 F. Supp. 2d 1346, 1353 (S.D. Fla. 2005).

[8] Accordingly it is unnecessary for this Court to address the additional arguments set out by Defendants with respect to Hans and Willem Franken. See Mot., at 6–8; see generally Mot. to Dismiss (ECF No. 103).

[9] Defendants' remaining argument pertaining to the remaining counts of the Amended Complaint is that the Defendants have been improperly lumped together in violation of Fed. R. Civ. P. 8(d)(1). Mot., at 4. However, this Court finds that this argument has been partially mooted by the dismissal of the trade secret counts, and that the remaining counts do not improperly lump the Defendants together.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (ECF No. 93) is hereby GRANTED IN PART AND DENIED IN PART. Defendants' Motion is GRANTED with respect to Counts VII and VIII of the Amended Complaint. Defendants' Motion is DENIED with respect to Counts I–VI of the Amended Complaint. Counts VII and VIII of the Amended Complaint are hereby DISMISSED WITH PREJUDICE. The remaining counts in the Amended Complaint are unaffected by this Order. The Clerk of Court is instructed to CLOSE this Case with respect to Defendants Johan Herman Franken and Willem Franken.

DONE AND ORDERED in Chambers at Miami, Florida, this 5th day of January, 2014.

Kevin Michael Moore
Digitally signed by Kevin Michael Moore
DN: cn=Kevin.Michael.Moore, o, ou,
email=k_michael_moore@flsd.uscourts.gov, c=US
Date: 2014.01.05 17:15:07 -05'00'

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All counsel of record

| 01/06/2014 | [130](#) | ORDER granting in part and denying in part [93](#) Motion to Dismiss. Signed by Judge K. Michael Moore on 1/5/2014. (nhl) (Entered: 01/06/2014) |
|---|---|---|
| 01/08/2014 | [131](#) | ORDER granting [129](#) Joint Motion for Entry of Protective Order Governing Production of Documents. Signed by Magistrate Judge Edwin G. Torres on 1/8/2014. (rse) (Entered: 01/08/2014) |
| 01/09/2014 | 132 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant Johan Herman Franken's Motion for Continuance of Trial Pending Resolution of Motion to Dismiss [124](#) . This Court has dismissed this action with respect to this Defendant. See Order on Motion to Dismiss [130](#) . Consequently, upon consideration of the Motion, the pertinent portions of the Record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Defendant's Motion [124](#) is DENIED AS MOOT. Signed by Judge K. Michael Moore on 1/9/2014. (nhl) (Entered: 01/09/2014) |
| 01/16/2014 | [133](#) | Unopposed MOTION to Continue *Trial Date* by ABB Inc., ABB Turbo Systems AG. Responses due by 2/3/2014 (Attachments: # [1](#) Text of Proposed Order)(Trueba, William) (Entered: 01/16/2014) |
| 01/17/2014 | 134 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiffs' Motion for Continuance of Trial [133](#) . UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion [133](#) is DENIED. Signed by Judge K. Michael Moore on 1/17/2014. (nhl) (Entered: 01/17/2014) |
| 01/22/2014 | 135 | PAPERLESS ORDER ON CLAIM CONSTRUCTION. THIS CAUSE came before the Court upon Plaintiffs' Claim Construction Brief [108](#) . The Parties have identified one term for construction in this matter, "dirt grooves." See Joint Claim Construction and Prehearing Statement [95](#) , at 1. Plaintiffs have defined this term as "a groove sized to discharge particles that could enter the lubricating gap at the wedge surface." Claim Construction Brief, at 6. Defendant has not filed a responsive Claim Construction Brief or provided a definition for this term. See Reply Claim Construction Brief [120](#) . Defendant has further indicated that they do "not agree to or object to this proposed construction." Joint Claim Construction and Prehearing Statement, at 1. UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Plaintiffs' definition of "dirt grooves" is hereby adopted by this Court. Signed by Judge K. Michael Moore on 1/22/2104. (nhl) (Entered: 01/22/2014) |
| 01/30/2014 | [136](#) | Unopposed MOTION for Entry of Judgment under Rule 54(b) *as to Counts VII and VIII of the Amended Complaint* by ABB Inc., ABB Turbo Systems AG. (Attachments: # [1](#) Text of Proposed Order)(Trueba, William) (Entered: 01/30/2014) |
| 01/31/2014 | [137](#) | NOTICE by ABB Inc., ABB Turbo Systems AG re [136](#) Unopposed MOTION for Entry of Judgment under Rule 54(b) *as to Counts VII and VIII of the Amended Complaint of Filing of Corrected Proposed Order Granting Said Motion* (Attachments: # [1](#) Text of Proposed Order) (Trueba, William) (Entered: 01/31/2014) |
| 01/31/2014 | 138 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiffs' Motion for Entry of Partial Final Judgment [136](#) . On January 6, 2014, this Court entered an Order [130](#) dismissing Plaintiffs' trade secret claims but preserving Plaintiffs' patent claims. Plaintiffs now seek partial final judgment in order to appeal this Court's rulings on the trade secret claims. See Fed. R. Civ. P. 54(b). UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby |

|  |  | ORDERED AND ADJUDGED that the Motion 136 is DENIED. Signed by Judge K. Michael Moore on 1/31/2014. (nhl) (Entered: 01/31/2014) |
|---|---|---|
| 02/20/2014 | 139 | Joint MOTION for Entry of Judgment under Rule 54(b) *and Rule 41(a)(2)*, Joint MOTION for Permanent Injunction *pursuant to Order and Judgment by Consent* by ABB Inc., ABB Turbo Systems AG. (Attachments: # 1 Text of Proposed Order and Judgment by Consent Stipulated to by the Parties)(Trueba, William) (Entered: 02/20/2014) |
| 02/21/2014 | 140 | ORDER granting 139 Motion. Signed by Judge K. Michael Moore on 2/21/2014. (nhl) (Entered: 02/21/2014) |
| 02/21/2014 |  | Civil Case Terminated. (nhl) (Entered: 02/21/2014) |
| 03/05/2014 | 141 | MOTION for Attorney Fees by Willem Franken, TurboUSA, Inc.. Responses due by 3/24/2014 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Backman, Jeffrey) (Entered: 03/05/2014) |
| 03/05/2014 | 142 | Defendant's MOTION for Attorney Fees by Johan Herman Franken. Responses due by 3/24/2014 (Attachments: # 1 Exhibit A - invoices, # 2 Exhibit B - response to draft motion for fees)(Haimo, Samantha) (Entered: 03/05/2014) |
| 03/06/2014 | 143 | PAPERLESS ORDER REFERRING Motion for Attorneys' Fees and Costs 141 . Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the Motion for Attorneys' Fees and Costs 141 is hereby referred to United States Magistrate Judge Edwin G. Torres to issue a Report and Recommendation. Signed by Judge K. Michael Moore on 3/6/2014. (dht) (Entered: 03/06/2014) |
| 03/06/2014 | 144 | PAPERLESS ORDER REFERRING Motion for Attorneys' Fees and Costs 142 . Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the Motion for Attorneys' Fees and Costs 142 is hereby referred to United States Magistrate Judge Edwin G. Torres to issue a Report and Recommendation. Signed by Judge K. Michael Moore on 3/6/2014. (dht) (Entered: 03/06/2014) |
| 03/12/2014 | 145 | Notice of Appeal as to 140 Order on Motion for Entry of Judgment under Rule 54(b), 130 Order on Motion to Dismiss by ABB Inc., ABB Turbo Systems AG. Filing fee $ 505.00 receipt number 113C-6562060. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under Transcript Information. (Trueba, William) (Entered: 03/12/2014) |
| 03/13/2014 |  | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re 145 Notice of Appeal,, Notice has been electronically mailed. (hh)(court name) Text Modified on 3/13/2014 (hh). (Entered: 03/13/2014) |
| 03/14/2014 | 146 | Acknowledgment of Receipt of NOA from USCA re 145 Notice of Appeal,, filed by ABB Turbo Systems AG, ABB Inc.. Date received by USCA: 3/14/14. USCA Case Number: 14-1356. (hh) (Entered: 03/14/2014) |
| 03/18/2014 | 147 | Joint MOTION to Stay *Pending Appeal* by Willem Franken, TurboUSA, Inc.. Responses due by 4/4/2014 (Epstein, Richard) (Entered: 03/18/2014) |
| 03/20/2014 | 148 | Unopposed MOTION to Withdraw as Attorney by Jack P. Smith, III. by ABB Inc., ABB Turbo Systems AG. Responses due by 4/7/2014 (Attachments: # 1 Text of Proposed Order) (Trueba, William) (Entered: 03/20/2014) |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 13, 2014, a true and correct copy of the foregoing Principal Brief of Plaintiffs-Appellants was electronically filed with the Clerk of this Court using the CM/ECF System, and a copy was also sent electronically via the court's CM/ECF system to counsel for Defendants-Appellees:

John H. Pelzer
Email: john.pelzer@gmlaw.com
Greenspoon Marder, P.A.
100 W. Cypress Creek Road, Suite 700
Fort Lauderdale, FL 33309
Tel: (954) 527-2469
Fax: (954) 333-4069

Jeffrey Aaron Backman
Email: jeffrey.backman@gmlaw.com
Greenspoon Marder, P.A.
200 East Broward Blvd., Suite 1500
Fort Lauderdale, FL 33301
Tel: (954) 491-1120
Fax: (954) 213-0140

*Attorneys for Defendants-Appellees*
*TurboUSA, Inc. and Willem Franken*

Samantha Tesser Haimo
Email: tesser@kolawyers.com
Jan Douglas Atlas
Email: atlas@kolawyers.com
Kopelowitz Ostrow, P.A.
200 S.W. 1st Avenue, Suite 1200
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300

*Attorneys for Defendant-Appellee*
*Johan Herman Franken*

By *s/Kurt L. Glitzenstein*

Kurt L. Glitzenstein
Fish & Richardson, P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Fax: (617) 542-8906
glitzenstein@fr.com

William R. Trueba, Jr.
Espinosa | Trueba, PL
1428 Brickell Ave., Ste 100
Miami, FL 33131
Telephone: (305) 854-0900
Fax: (855) 854-0900
wtrueba@etlaw.com

*Attorneys for Plaintiffs-Appellants*
*ABB Turbo Systems AG and ABB Inc.*

## **CERTIFICATE OF COMPLIANCE**

The Principal Brief of Plaintiffs-Appellants is submitted in accordance with the type-volume limitation of Rule 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure.  The Brief contains 9,509 words, as determined by Microsoft Word.


Dated:  May 13, 2014                    By *s/Kurt L. Glitzenstein*

                                        Kurt L. Glitzenstein
                                        Fish & Richardson, P.C.
                                        One Marina Park Drive
                                        Boston, MA 02210
                                        Telephone: (617) 542-5070
                                        Fax: (617) 542-8906
                                        glitzenstein@fr.com

                                        William R. Trueba, Jr.
                                        Espinosa | Trueba, PL
                                        1428 Brickell Ave., Ste 100
                                        Miami, FL 33131
                                        Telephone: (305) 854-0900
                                        Fax: (855) 854-0900
                                        wtrueba@etlaw.com

                                        *Attorneys for Plaintiffs-Appellants*
                                        *ABB Turbo Systems AG and ABB Inc.*